No. 24-11477

_____

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

FANE LOZMAN,
*Defendant/Appellant.*

_____

Appeal from the United States District Court for the Southern District of Florida
No. 9:21-CV-811119 (Hon. Donald M. Middlebrooks)

_____

**BRIEF FOR FEDERAL APPELLEES**

_____

TODD KIM
*Assistant Attorney General*

Of Counsel:                          MICHAEL T. GRAY
                                     *Attorney*
ALEXANDRA HOLLIDAY                    Environment and Natural Resources Division
ERICA ZILIOLI                        U.S. Department of Justice
*Attorneys*                          Post Office Box 7415
U.S. Army Corps of Engineers         Washington, D.C. 20044
                                     (202) 532-3147
                                     michael.gray2@usdoj.gov

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned counsel certify the following persons or entities have been associated with or have an interest in the outcome of this case:

1.  Adkins, Brandon (Attorney for Appellee United States)

2.  City of Riveira Beach

3.  Gray, Michael T.  (Attorney for Appellee United States)

4.  Kim, Todd (Assistant Attorney General, U.S. Department of Justice)

5.  Lapointe, Markenzy (United States Attorney for the Southern District of Florida)

6.  Lee, Dexter (Attorney for Appellee United States)

7.  Lozman, Fane (Plaintiff-Appellant)

8.  Martinez, Rachel (Attorney for Appellee United States)

9.  Matthewman, William (U.S. Magistrate Judge)

10.  Middlebrooks, Donald M. (Judge, Southern District of Florida)

/s/ *Michael T. Gray*
MICHAEL T. GRAY

Counsel for Appellees

## STATEMENT REGARDING ORAL ARGUMENT

The United States believes that oral argument is unnecessary, as the facts

and issues are straightforward and adequately presented in the briefs.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................1

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION .........................................................................................1

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES..................................................................2

STATEMENT OF THE CASE......................................................................2

      A.     Statutory and regulatory background ....................................2

      B.     Factual background ................................................................4

      C.     Course of Proceedings............................................................8

      D.     Standard of Review ...............................................................9

SUMMARY OF ARGUMENT ....................................................................10

ARGUMENT ...............................................................................................11

I.      The district court correctly concluded that Lake Worth Lagoon
      is a navigable water under the RHA..............................................11

II.     The United States' lawful exercise of its enforcement discretion
     provides no basis on which to reverse the district court................18

III.    Lozman suffered no prejudice in this case from the district
    court's decision to deny him electronic filing privileges. ............21

CONCLUSION............................................................................................22

CERTIFICATE OF COMPLIANCE...........................................................23

# TABLE OF AUTHORITIES*

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).......................................................................9

*Campbell v. Rainbow City, Ala.*,
    434 F.3d 1306 (11th Cir. 2006) ..................................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).....................................................................10

*Citizens for Smart Growth v. Secretary of Dept. of Transp.*,
    669 F.3d 1203 (11th Cir. 2012) ....................................................9

*Deltona Corp. v. Odom*,
    341 So. 2d 977 (Fla. 1976) .........................................................16

*Ellis v. England*,
    432 F.3d 1321 (11th Cir. 2005) ....................................................9

*Heckler v. Chaney*,
    470 U.S. 821 (1985).....................................................................19

*Huron Mountain Club v. U.S. Army Corps of Engineers*,
    545 F. App'x 390 (6th Cir. 2013)................................................19

*Kaiser Aetna v. United States*,
    444 U.S. 164 (1979).....................................................................18

* *Lewis v. Union City, Ga.*,
    918 F.3d 1213 (11th Cir. 2019) ..................................................19

*Oklahoma v. Texas*,
    258 U.S. 574 (1922).....................................................................16

---

* Authorities upon which we chiefly rely are marked with asterisks.

*PPL Montana, LLC v. Montana*,
  565 U.S. 576  (2012) ................................................................. 16

*Timson v. Sampson*,
  518 F.3d 870  (11th Cir. 2008) ................................................ 12

*TransUnion LLC v. Ramirez*,
  594 U.S. 413  (2021) ................................................................. 19

*United States v. Angell*,
  292 F.3d 333 (2d Cir. 2002) ................................................... 12

\* United States v. Appalachian Elec. Power Co.,
  311 U.S. 377 (1940) ............................................................ 3, 16

*United States v. Armstrong*,
  517 U.S. 456  (1996) ................................................................. 19

*United States v. Campbell*,
  26 F.4th 860  (11th Cir. 2022) ................................................ 12

*United States v. DeFelice*,
  641 F.2d 1169 (5th Cir. 1981) ................................................ 18

*United States v. Estate of Boothby*,
  16 F.3d 19  (1st Cir 1994) ....................................................... 18

*United States v. Harrell*,
  926 F.2d 1036  (11th Cir. 1991) ............................................... 3

*United States v. Rands*,
  389 U.S. 121  (1967) ................................................................. 17

*United States v. Stoeco Homes, Inc.*,
  498 F.2d 597  (3d Cir. 1974) ............................................. 12, 13

*United States v. Texas*,
  599 U.S. 670  (2023) ................................................................. 19

*Wayte v. United States*,
  470 U.S. 598  (1985) ................................................................. 21

*Wyandotte Transp. Co. v. United States*,
389 U.S. 191 (1967)...........................................................................2

## Statutes

5 U.S.C. § 701(a)(2)..........................................................................19

28 U.S.C. § 1291.................................................................................2

28 U.S.C. § 1331.................................................................................1

28 U.S.C. § 332(d)............................................................................21

33 U.S.C. § 401.................................................................................1

* 33 U.S.C. § 403...........................................................................3, 13

33 U.S.C. § 404.................................................................................13

33 U.S.C. § 406.................................................................................4

## Regulations

33 C.F.R. § 322.2(b).........................................................................20

33 C.F.R. § 322.3(a)...........................................................................3

33 C.F.R. § 329.12.............................................................................12

* 33 C.F.R. § 329.12(b).................................................................13, 17

* 33 C.F.R. § 329.4.............................................................3, 4, 12, 17

33 C.F.R. § 329.8(a)(3.......................................................................18

## Rules

Fed. R. App. P. 4(a)(1)(B)..................................................................2

Fed. R. Civ. P. 56(a)..........................................................................9

Federal Rule of Appellate Procedure 32(a)(5)..........................................................23

Federal Rule of Appellate Procedure 32(a)(6)..........................................................23

Federal Rule of Appellate Procedure 32(a)(7)(B) ....................................................23

Federal Rule of Appellate Procedure 32(f)...............................................................23

# INTRODUCTION

The United States sought an injunction requiring Fane Lozman to remove unauthorized structures and obstructions from Lake Worth Lagoon. Lozman installed three floating docks and a shipping container in navigable waters without permission, violating the Rivers and Harbors Appropriation Act of 1899 ("RHA"). Congress in the RHA expressly made injunctive relief available to remove unauthorized structures from navigable waters. The district court granted summary judgment and an injunction requiring Lozman to remove his three floating docks and shipping container from the waters of Lake Worth Lagoon unless and until he obtains authorization for the structures from the U.S. Army Corps of Engineers ("Corps"). The court also prohibited Lozman from erecting any other structures in the waters of Lake Worth Lagoon without authorization. Lozman, proceeding pro se, appeals the district court's judgment. This Court should affirm.

# STATEMENT OF JURISDICTION

(A)    The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arose under the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401 *et seq*. R.1:1[1]

---

[1] This brief uses the form "R.[docket number-attachment]:[page]" to reference the record, such that "R.1:1" refers to district court docket entry 1 at page 1.

(B)     This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered a final judgment. R.118.

(C)     That judgment was entered on March 14, 2024. R.118. Lozman timely filed his notice of appeal on May 7, 2024. R.120; Fed. R. App. P. 4(a)(1)(B).

(D)     The appeal is from final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

1.      Whether the district court correctly concluded that Lake Worth Lagoon, being subject to the ebb and flow of the tide, and being used for interstate commerce, is a navigable water under the RHA.

2.      Whether the United States' exercise of its enforcement discretion to bring this suit against Lozman provides any basis on which to reverse the district court's entry of summary judgment.

3.      Whether Lozman was prejudiced by the district court's decision to deny electronic filing to a pro se defendant.

## STATEMENT OF THE CASE

### A.      Statutory and regulatory background

Congress enacted the RHA "to prevent obstructions in the Nation's waterways." *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967). Clause one of RHA section 10 prohibits "[t]he creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the

waters of the United States." 33 U.S.C. § 403. Clause two of RHA section 10 also makes it unlawful "to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army." *Id.*

With limited exceptions not present here, a Department of the Army permit is required under section 10 for the installation of structures or work in or affecting navigable waters of the United States. 33 C.F.R. § 322.3(a). "Navigable waters of the United States" include "those waters that are subject to the ebb and flow of the tide." 33 C.F.R. § 329.4; *United States v. Harrell*, 926 F.2d 1036, 1039 (11th Cir. 1991) ("The Corps of Engineers' regulations promulgated pursuant to the Rivers and Harbors Act incorporate the [*United States v. Appalachian Elec. Power Co.*, 311 U.S. 377 (1940)] definition, defining navigable waters of the United States as 'those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce.'" (quoting 33 C.F.R. § 329.4)). Further, "[a] determination of navigability, once made, applies laterally over the entire surface

of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity." 33 C.F.R. § 329.4.

The United States is authorized to commence a civil action for injunctive relief to remove any structures or parts of structures erected in violation of RHA section 10. 33 U.S.C. § 406.

### B.    Factual background

This case concerns floating docks, a shipping container, and various appurtenances that Lozman placed in Lake Worth Lagoon. Lake Worth Lagoon is Palm Beach County's largest estuary, spanning approximately twenty-one miles from North Palm Beach to Ocean Ridge. R.101:1. Lake Worth Lagoon is up to a mile wide and connected to the Atlantic Ocean via two inlets. R.101:2. The Atlantic Intracoastal Waterway also cuts through the estuary as it traverses the East Coast of the United States. R.101:2. Lake Worth Lagoon is subject to the ebb and flow of the tide and is also used to transport interstate commerce. R.101:2.

Lozman placed several floating docks and a modified shipping container he refers to as his "floating home" in Lake Worth Lagoon. *See* R.101:2-3. The structures were in the waters over a partially submerged property that Lozman owns, with the address 5101 North Ocean Drive, Riviera Beach, Florida. R.101:1. The Complaint and the parties refer to that property as the "Site." R.101:1. Lozman

identified that location as "A" in an aerial image of Lake Worth Lagoon, reproduced below. R.101-20; R.101:6.



*R.101-20*

The floating docks each consist of concrete, a foam core, and wood holding the modules together. R.101:4. The floating docks are designed to be held in position by pilings. R.101:4-5. Each concrete module weighs at least 4,000 pounds, and together they weigh 120,000 to 150,000 pounds. R.101:4. The floating concrete dock that supports the shipping container is about sixty-by-eight feet. R.101:4. The two other sections of floating dock not supporting the shipping container are eighty to ninety feet long. R.101:4. The two sections of floating dock not supporting the shipping container had previously been one section until they

broke into two pieces. R.101:4. Lozman attempts to hold the floating docks together with rope. R.101:5. The floating docks are not vessels, nor are they capable of self-propulsion. R.101:5. None of Lozman's structures has navigation lights. R.101:5.



*R.101-18:11 (photograph depicting Lozman's remaining structures)*

The shipping container is about twenty feet long, eight feet wide, and weighs about 12,000 pounds. R.101:5. Lozman modified it to include windows, doors, stairs, and a steel rooftop deck, among other additions. R.101:6. Lozman refers to the shipping container as his "floating home." R.101:6. At the time of the district court's decision, Lozman had slept in the shipping container only twice. R.101:6.

In August 2021, Lozman moved the floating docks and the shipping container to a different location near Little Munyon Island in Lake Worth Lagoon. R.101:7. Lozman identified that location as "B" in the aerial photograph above. R.101-20; R.101:7. He kept the structures in place with "as many as eight

anchors." R.101:7-8. In location B, the structures were entirely within the waters of Lake Worth Lagoon and away from the shoreline. R.101:8.

Within a couple months, Lozman again moved the two floating docks and the shipping container near the western edge of a different property that is north of the Site, away from the shore, and completely within the tidal waters of Lake Worth Lagoon. R.101:7-8. The property has an address of 5301 North Ocean Drive. R.101:1. Lozman is trustee of a trust that owns the property. R.101:1. Lozman identified this location as location "C". R.101-20; R.101:8. Location C is where the floating docks and shipping container were for most of the district court proceedings (about two years). R.101:8.

While at location C, one of the floating docks split into two pieces. R.101:4. Lozman kept the structures in place at location C with two anchors: one connected to two docks and the other connected to one dock. R.101:5. The anchors have been connected to the floating docks by chains affixed into piling-pockets on the floating docks. R.101:5.

Sometime in early December 2023 (shortly after he was deposed in this case), Lozman again moved his three floating docks and shipping container back to the Site, waterward of the mean high-water line. R.101:1; R.101:9.

At various times, Lozman's floating docks have become unmoored and have drifted farther into Lake Worth Lagoon. In perhaps the most concerning incident—

which was detailed at the preliminary injunction hearing—the eighty-foot dock with the modified shipping container became unmoored, floated across Lake Worth Lagoon, and beached at a public park on the opposite side of the Lagoon from the Site. R.101:7. The floating docks would become detached from one another and drift hundreds of feet apart multiple times a year. R.101:5, 7. After one of the docks broke in half, the pieces spun in a circle with the wind. R.101:8. And they moved with the action of the tide, waves, and wind, sometimes hundreds of feet from one day to the next. R.101:8.

Lozman's structures harmed the Lake Worth Lagoon ecosystems by damaging seagrass. R.101:6, 8. The light-green areas in the photographs below show the damage to seagrass in Lake Worth Lagoon caused by the chains and anchors Lozman used to try to secure the floating docks. R.101:6, 8.



*R.101-18*                    *R.101-18*

### C.    Course of Proceedings

In June 2021, the United States filed a complaint alleging violations of section 10 of the RHA and seeking injunctive relief requiring Lozman to remove

his structures from Lake Worth Lagoon. The United States then moved for a preliminary injunction. R.4. The district court denied the preliminary injunction, concluding that the equities did not favor injunctive relief at that time, and referred the parties to mediation. R.43:4-5. After mediation efforts did not resolve the case, the United States moved for summary judgment. R.100. The district court granted summary judgment in favor of the United States. R.117, R.118.

### D.    Standard of Review

This Court reviews de novo the district court's grant of summary judgment. *Citizens for Smart Growth v. Secretary of Dept. of Transp.*, 669 F.3d 1203, 1210 (11th Cir. 2012).

The district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Id.* Where the nonmoving party fails to produce evidence

sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## SUMMARY OF ARGUMENT

1.      Lake Worth Lagoon is a navigable water under the RHA because it is connected to the Atlantic Ocean and subject to the ebb and flow of the tide, and because it serves as a highway for commerce. As a navigable water, the Corps' jurisdiction extends across the waterbody to the mean high-water line. Lozman placed his structures in Lake Worth Lagoon and below the mean high-water line, within the Corps' jurisdiction. The district court thus correctly concluded that Lozman violated the RHA and required him to remove those structures.

Lozman's arguments that he did not place his structures in a navigable water are unpersuasive. First, the 1850 Swamp and Overflowed Lands Act does not change the analysis. Even if Lozman were correct that his property was transferred to Florida under that Act and was not at that time considered navigable for purposes of deciding whether the state already owned it as a sovereign, the test for navigability under the RHA is different than that for sovereign ownership. The RHA test plainly includes waters that later become navigable, and it is undisputed that where Lozman placed his structures is subject to the ebb and flow of the tide and commerce travels over it, making it *currently* navigable under the RHA. Second, it makes no difference whether the property was at one time dry land or

whether it is commonly mudflats now. There is no dispute that the part of property where the structures were located is below the mean high-water line in a navigable waterbody. The Corps therefore had jurisdiction over that property under the RHA. Finally, the Corps' jurisdiction extends to navigable waters even where the underlying property is privately held.

2. Lozman argues that equitable relief should not have been issued here because the Corps engaged in selective enforcement of the RHA against him. But the Corps' exercise of its enforcement discretion is generally unreviewable, and Lozman has provided no evidence to substantiate his claims of selective enforcement. Nor has Lozman demonstrated why his violation of the RHA should be excused because the Corps has allegedly not acted with respect to other alleged violations of the RHA.

3. Lozman has not argued, much less demonstrated, that the district court's denial of his request for electronic filing privileges prejudiced the outcome of this case on the merits in any way.

## ARGUMENT

### I. The district court correctly concluded that Lake Worth Lagoon is a navigable water under the RHA.

The district court entered summary judgment for the United States on its claims that Lozman violated both clauses of section 10 of the RHA. On appeal, Lozman primarily contends that his structure is not built in navigable waters and

therefore summary judgment should not have been entered against him.[2] Op. Br.

9-13. Under the RHA regulations, navigable waters include "those waters that are

subject to the ebb and flow of the tide" as well as waters that are "presently used,

or have been used in the past, or may be susceptible for use to transport interstate

or foreign commerce." 33 C.F.R. § 329.4. *See also*, *e.g.*, *United States v. Angell*,

292 F.3d 333, 336 (2d Cir. 2002) (tidal canal is navigable); *United States v. Stoeco*

*Homes, Inc.*, 498 F.2d 597, 610 (3d Cir. 1974) (concluding test for navigability of

tidal waters is the ebb and flow of the tide).

As the district court correctly concluded, Lozman concedes that that the

waters of Lake Worth Lagoon are subject to the ebb and flow of the tide and that

the Lagoon is used to transport interstate or foreign commerce. R.117:8; R.111:2;

R.101:2. Lake Worth Lagoon is, therefore, a navigable water. *See* 33 C.F.R.

§ 329.4. And the Corps' regulatory jurisdiction under RHA section 10 extends

across the entire surface of tidal waters. 33 C.F.R. § 329.12; *see also id.* § 329.4

("A determination of navigability, once made, applies laterally over the entire

---

[2] In the district court, Lozman also argued that he did not build a "structure" within the meaning of the RHA. Even construing his brief liberally, Lozman does not present that argument on appeal, and the argument is therefore forfeited. *See United States v. Campbell*, 26 F.4th 860, 863 (11th Cir. 2022) (en banc) (explaining issues not raised in an opening brief are forfeited); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (citation omitted)). Indeed, Lozman's brief uses the word "structure" only once to describe the suit that the United States brought. Op. Br. 3.

surface of the waterbody . . . .”). Here, that means jurisdiction extends to the edge (that is, the mean high-water line) of Lake Worth Lagoon, even if portions of the waterbody are extremely shallow. *Id.* § 329.12(b) (“Regulatory jurisdiction extends to the entire surface and bed of all waterbodies subject to tidal action. Jurisdiction thus extends to the edge . . . of all such waterbodies, even though portions of the waterbody may be extremely shallow . . . .”).

Section 11 of the RHA authorized establishment of harbor lines beyond which certain structures could not extend. 33 U.S.C. § 404. And section 10 prohibits unpermitted structures where there are no harbor lines. 33 U.S.C. § 403. No harbor lines have been established at the Site or any other location where Lozman’s floating docks and shipping container have been. R.101:2.

At the time of the complaint, throughout the litigation, and when the district court issued its decision, Lozman’s floating docks and shipping container were in the waters of Lake Worth Lagoon, below the mean high-water line, and where no harbor lines had been established.[3] R.118:2-3. Photographs from January 2021 show the floating docks supporting Lozman’s shipping container in the waters of Lake Worth Lagoon near the Site. R.118:7, 10; R.101:7; R.101-21 to 25. That was

---

[3] Lozman did not seek a stay pending appeal and thus is required to move his structures from Lake Worth Lagoon. He has not yet filed with the district court a “notice of completion” representing that he has removed the structures from the waters, as is required by the district court’s final judgment. R.118:2.

where the structures were at location A when the United States filed suit. The area around the structures is completely submerged by the waters of Lake Worth Lagoon. R.101-21; R.101:1. And the structures were moored to vegetation on the shore using chain and rope, which appear to have been an attempt to prevent the structures from being carried away in the water. R.101:6.

In August 2021, Lozman moved two floating docks and the shipping container to location B near Little Munyon Island in Lake Worth Lagoon, where they stayed for less than two months. R.101:7. Lozman kept the structures in place with "as many as eight anchors." R.101:7-8. In location B, the structures were again entirely within the tidal waters of Lake Worth Lagoon, away from the shoreline, and below the mean high-water line. R.101:8.

Lozman then moved the two floating docks and shipping container near the western edge of a different property (5301 North Ocean Drive) that is north of the Site, at location C. R.101:8. Lozman's unauthorized structures were, again, fully within the Lake Worth Lagoon and below the mean high-water line. R.117:10; R.101:1, 8. Lozman kept the two floating docks and shipping container at that location for two years. R.101:8. Lozman again kept the structures in place with anchors. R.101:5. The anchors were connected to the floating docks by chains affixed into piling pockets on the docks. *Id*.

Sometime in early December 2023, Lozman again moved his three floating docks and shipping container back near the shoreline of the Site, R.101:9, and still within the navigable waters of Lake Worth Lagoon. R.117:10; R.101:9. A photograph of the structures at the Site shows they are surrounded by the waters of Lake Worth Lagoon. R.101:9; R.101-26. The photograph was taken on December 5, 2023, about two hours after high tide. R.101:9. And, consistent with the tide tables, watermarks on adjacent vegetation indicated the water surface at the time of the photograph was about eight inches below the mean high-water level. R.101:9. The apparent shoreline is also shown in the photograph based on rafted debris and herbaceous vegetation. R.101:9. The floating docks and shipping container are below the mean high-water line and are thus in navigable waters. R.101:9; R.101-2; R.101-5 (surveys showing mean high-water line). The district court correctly concluded that there is no genuine dispute of material fact on these points and entered summary judgment for the United States. R.117:10.

In arguing for reversal, Lozman asserts that Lake Worth Lagoon is not navigable for three reasons. First, Lozman relies on the 1850 Swamp and Overflowed Lands Act, ch. 84, 9 Stat. 519 (1850), to argue that his property cannot be a navigable water. Op. Br. 9-10. Lozman's theory seems to be that his property was previously sold by the State of Florida pursuant to a Board of Trustees of the Internal Improvement Trust Fund Deed, which he says demonstrates that Florida

acquired what is now his land by virtue of the Swamp Land Act. Op. Br. 9-10. And Lozman contends that under Florida law, acquisitions under the Swamp Land Act did not include land beneath navigable waters because land beneath navigable waters was "already held by the State in trust by virtue of sovereignty." *Id.* (citing *Deltona Corp. v. Odom*, 341 So. 2d 977, 988 (Fla. 1976).

But state title to lands under navigable waters is determined under the equal-footing doctrine, which turns on navigability in a water body's natural and ordinary condition *at the time of statehood*. *E.g.*, *Oklahoma v. Texas*, 258 U.S. 574, 585-86 (1922). Navigability under the RHA, on the other hand, is not restricted to the time a state entered the union, but can be established with evidence of past, present, or potential future navigability. *See PPL Montana, LLC v. Montana*, 565 U.S. 576, 592-93 (2012) (explaining different navigability tests). As the Supreme Court explained in *Appalachian Power*, "navigability to fix ownership of the riverbed" is determined as of the time of statehood, whereas "navigability, for the purpose of the regulation of commerce, may later arise." 311 U.S. at 408. Thus, whether Lozman's land was transferred by the Swamp Land Act because it was not under a navigable water at the time of statehood is irrelevant to the RHA analysis. Lake Worth Lagoon is presently navigable under the RHA because it is subject to the ebb and flow of the tide and because commerce flows over the waterbody. Lozman placed his structure within that navigable water. He therefore violated the RHA.

Second, Lozman argues that a map from 1879 shows his property was then dry land and that he built the structure on "mudflats" that are not waters of the United States. Op. Br. 10-14.[4] Lozman includes several pictures intending to demonstrate that the area is not navigable because that part of his property is "regularly mudflats." Op. Br. 2, 11-12. But, as discussed above, the Corps' jurisdiction extends across the entire surface of the tidal waters of Lake Worth Lagoon, even if portions of the waterbody are "extremely shallow." 33 C.F.R. § 329.12(b); *see id*. § 329.4. Whether Lozman's floating docks and shipping container were at one time located in a shallow mudflat does not defeat jurisdiction. And Lozman does not address the reach of tidal waters where Lozman has kept his floating docks and shipping container. *See* R.117:10 ("[B]oth Parties agree that the waterway at issue is now subject to the ebb and flow of the tide."). Photographic evidence proves dispositively that the floating docks and shipping container were surrounded by tidal waters, even at the most recent location where Lozman relocated them. R.117:10; R.101-21 to 26. As the Second Circuit has

---

[4] Though he does not develop the argument on appeal, Lozman also refers briefly to a bulkhead line on his property. Op. Br. 2, 6, 14. In the district court, Lozman relied on Florida case law that does not address the term "navigable waters" under the RHA or other federal law to argue that the structure's placement shoreward of the bulkhead line demonstrates it was not placed in navigable waters. R.110:16–18. But that state law is not relevant to whether the waterbody is navigable under the RHA. *See*, *e.g.*, *United States v. Rands*, 389 U.S. 121, 123–124 (1967) (explaining how navigational servitude grants the United States government a superior right over state law to regulate navigable waters of the United States alongside private property).

explained, that a waterbody "may be impassable at low tide is immaterial, as Army Corps jurisdiction under section 10 'extends to the line on the shore reached by the plane of the mean (average) high water.'" *United States v. Angell*, 292 F.3d 333, 336-37 (2d Cir. 2002) (citation omitted).

Third, Lozman contends that the structure sits on private property and thus cases dealing with structures in public waters are not relevant. Op. Br. 13 (distinguishing *United States v. Estate of Boothby*, 16 F.3d 19, 21 (1st Cir 1994)). But whether the RHA applies turns on the navigability of the waterbody, not whether it is publicly or privately owned. As the regulations provide: "Private ownership of the lands underlying the waterbody . . . does not preclude a finding of navigability." 33 C.F.R. § 329.8(a)(3); *see also Kaiser Aetna v. United States*, 444 U.S. 164 (1979) (privately owned pond artificially dredged and connected to navigable waters was subject to regulation under the Rivers and Harbors Act); *United States v. DeFelice*, 641 F.2d 1169 (5th Cir. 1981) (private artificial canal subject to the ebb and flow of the tide was subject to Rivers and Harbors Act).

## II. The United States' lawful exercise of its enforcement discretion provides no basis on which to reverse the district court.

Lozman contends that the United States is unfairly enforcing the RHA against him while choosing not to bring enforcement actions against other alleged violators. The United States' enforcement discretion under the RHA is generally not reviewable, as the Corps' choice to recommend enforcement and the Attorney

General's decision to file suit are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830-32 (1985); *see also Huron Mountain Club v. U.S. Army Corps of Engineers*, 545 F. App'x 390, 396 (6th Cir. 2013) ("The Corps' decision to bring (or not bring) an enforcement action is discretionary and not subject to review by this court."). As the Supreme Court has explained, "under Article II, the Executive Branch possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" *United States v. Texas*, 599 U.S. 670, 678-79 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021).

A selective-prosecution claim does not go to the merits, but instead rests on equal protection grounds, and "asks a court to exercise judicial power over a 'special province' of the Executive." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Heckler*, 470 U.S. at 832). Lozman contends that the government should have been "at a disadvantage when seeking equitable relief" because of selective enforcement. Op. Br. 21. But Lozman would at the very least have to clearly establish that the other alleged violators were similarly situated to him in all material respects. *See*, *e.g.*, *Lewis v. Union City, Ga.*, 918 F.3d 1213, 1227-31 (11th Cir. 2019) (en banc); *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006) ("[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause") (citation omitted)). Lozman has not

proffered any evidence that other alleged violators are so situated, or that this enforcement action against him is the result of "retaliatory payback" for other litigation against an entirely different party, Op. Br. 13-15, and not because of the dangers his regularly unmoored and drifting structures pose. *See supra* (pp. 7-8). And that there have been few RHA enforcement actions originating in the Jacksonville District may just as well show that individuals typically comply with the permit process for docks and other permitted structures without the need for enforcement action.

Lozman's assertion that there are "hundreds of vessels and dozens of floating homes moored adjacent . . . on public property" fares no better. Op. Br. 21. First, as to the alleged "hundreds of vessels," the Corps does not have jurisdiction under the RHA over vessels that are not permanently moored. *See* 33 C.F.R. § 322.2(b). Thus, the Corps cannot seek enforcement on the vessels outside its jurisdiction, and their existence would demonstrate nothing regarding selective enforcement of the RHA.

Second, even if there were record support for his statement that there are dozens of moored homes lacking permits on public property—and there is not—it would not establish that Lozman is similarly situated to other violators, or that equitable relief should not issue against him. There is no evidence that any other structures are in the same state of disrepair as Lozman's structure, or that other

structures have become unmoored and move about in the Lagoon as Lozman's structures have. Indeed, Lozman provides no information to show that other structures in the Lagoon are in fact posing a navigational or safety hazard, or that the Corps even has information as to who placed the other structures in the Lagoon, or that they lack permits. Lozman also has not provided (and cannot provide) any evidence that it is the United States' (or the Corps') intent to treat him differently than others alleged to be in violation of the RHA.

Finally, as described above, the United States retains broad discretion as to when and against whom to enforce federal law, and decisions whether to prosecute are "ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). The district court properly issued an injunction requiring Lozman to remove his structures, and this Court should reject his half-hearted contentions of selective enforcement.

## III.    Lozman suffered no prejudice in this case from the district court's decision to deny him electronic filing privileges.

Lozman's final argument is that the district court erred by denying him electronic filing privileges. Op. Br. 22. The United States takes no position on whether pro se litigants should be allowed to file electronically in the Southern District of Florida or whether this proceeding presents the appropriate forum for addressing such matters. *Cf.* 28 U.S.C. § 332(d) (authorizing circuit judicial councils to make appropriate orders and review district court rules). But here,

Lozman does not identify any document that he would have filed but was unable to, or any prejudice from a deadline missed because of having to file non-electronically, or any other source of prejudice resulting from the district court's order that affected the outcome of this case. The denial of electronic filing privileges thus has no bearing on the outcome of this appeal.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment in favor of the Corps.

Respectfully submitted,

/s/ *Michael T. Gray*
TODD KIM
*Assistant Attorney General*

Of Counsel:

ALEXANDRA HOLLIDAY
ERICA ZILIOLI
*Attorneys*
U.S. Army Corps of Engineers

MICHAEL T. GRAY
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3147
michael.gray2@usdoj.gov

October 7, 2024
90-5-1-1-21990

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 4,982 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Michael T. Gray*
MICHAEL T. GRAY

Counsel for Appellees